**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**Alexandria Division**

JONATHAN HUDSON, *et al.*,      )
                               )
          Plaintiffs,        )
                               )
v.                            )     Civil Action No. 1:23-cv-781 (RDA/WBP)
                               )
RALPH WAYNE DUNN, *et al.*,     )
                               )
          Defendants.      )

**PROPOSED FINDINGS OF FACT AND RECOMMENDATIONS**

Before the Court is Plaintiffs Jonathan Hudson and Robert Skipper's[1] (collectively, "Plaintiffs") Motion for Default Judgment[2] against Defendants Ralph Wayne Dunn; Sherry Gossard; Lynnway Tank and Tower, LLC ("Lynnway T&T"); and Suburban Contractors, LLC ("Suburban") (collectively, "Defendants"). (ECF No. 18.) This serves as a proposed findings of fact and recommendations pursuant to 28 U.S.C. § 636(b)(1)(C), and a copy will be provided to all interested parties.

## I.    Procedural Background

Plaintiffs are two construction workers who traveled from Texas to Virginia to work on water tanks at a facility in Quantico, Virginia. Each has sued their former employer (a subcontractor on the project), the owners and operators of their former employer, and the general

---

[1] Plaintiffs Kameron Wisinger, Tanner Clifton, and Dalton Davis are proceeding *pro se* and are not parties to the pending Motion for Default Judgment.

[2] Plaintiffs' motion requests a default judgment against all defendants except for Suburban, but their Memorandum in Support of Default Judgment (ECF No. 19) seeks a default judgment against all Defendants, including Suburban. In a hearing on February 23, 2024, Plaintiffs' counsel confirmed that Plaintiffs inadvertently omitted Suburban's name from the Motion for Default Judgment but that Suburban was served with all pleadings, including the Memorandum in Support of Default Judgment.

contractor for failure to pay wages and overtime. On June 16, 2023, Plaintiffs filed a Complaint against Defendants alleging two counts: "Unpaid Minimum Wage and Overtime - Fair Labor Standards Act ("FLSA") (Count I), and "Violation of Virginia Wage Laws," generally referencing the Virginia Minimum Wage Act ("VMWA"), the Virginia Overtime Wage Act ("VOWA"), and the Virginia Wage Payment Act ("VWPA") (Count II).[3] (ECF No. 1.)

On June 20, 2023, the Clerk issued summonses for service on Defendants (ECF No. 6), after which affidavits of service were filed with the Court reflecting that private process servers served (1) Suburban on June 28, 2023 (ECF No. 13); (2) Lynnway T&T on June 30, 2023 (ECF No. 7); and (3) Ralph Dunn and Sherry Gossard on July 9, 2023 (ECF Nos. 8 and 9). Under Federal Rule of Civil Procedure 12(a), Defendants had to file responsive pleadings, respectively, on July 19, 21, and 30, 2023, which each has failed to do.

On August 11, 2023, Plaintiffs asked the Clerk to enter a default against Ralph Dunn, Sherry Gossard, and Lynnway T&T (ECF No. 10), which the Clerk entered on August 16, 2023 (ECF No. 12). On October 4, 2023, Plaintiffs asked the Clerk to enter a default against Suburban (ECF No. 14), which the Clerk entered on October 5, 2023 (ECF No. 15).

On January 23, 2024, counsel for Plaintiffs asked the Court for leave to withdraw as counsel for the other plaintiffs, Tanner Clifton, Dalton Davis, and Kameron Wisinger. That same day, Plaintiffs filed their instant motion for default judgment on behalf of Hudson and Skipper, along with a notice waiving a hearing on their motion. (ECF Nos. 16, 18, and 20.)

On January 26, 2024, Magistrate Judge John F. Anderson ordered Plaintiffs to notice their motion for default judgment for a hearing, to provide the notice of the hearing to all Defendants, and to provide the required *Roseboro* notice to individual defendants Dunn and

---

[3] Plaintiffs have not claimed a breach of contract.

Gossard, as required by Local Rule 7(K). (ECF No. 21.) Plaintiffs complied with Judge Anderson's order (ECF Nos. 22, 23, and 24), and later on February 7, 2024, Judge Anderson granted Plaintiffs' counsel's motion to withdraw as counsel for plaintiffs Wisinger, Clifton, and Davis (collectively, "*Pro Se* Plaintiffs") and ordered the *Pro Se* Plaintiffs to file a notice with the Court on or before February 21, 2024, stating whether they intend to pursue their claims and, if so, informing the Court whether they would be retaining counsel or representing themselves. (ECF No. 25.) As of the date of this report, the *Pro Se* Plaintiffs have not complied with Judge Anderson's order or otherwise made an appearance.

On February 20, 2024, the Court[4] ordered Plaintiffs to file a supplemental brief that identified the precise damages they seek and the legal bases for those damages (ECF No. 26), which they filed on February 22, 2024 (ECF No. 27).

The Court held a hearing on Plaintiffs' Motion for Default Judgment on February 23, 2024. Plaintiffs' counsel appeared, but no one appeared on behalf of Defendants or the *Pro Se* Plaintiffs. (ECF No. 28.)

## II.    Factual Background

The Complaint (ECF No. 1) and the Memorandum in Support of Default Judgment and the exhibits attached to it (ECF No. 19) establish the facts below.

Suburban, a general contractor, hired Lynnway T&T as a subcontractor to perform construction services on water tanks at a facility in Quantico, Virginia. (ECF No. 1 ¶¶ 5, 14; ECF No. 19-1.) Dunn and Gossard are the owners, members, and managers of Lynnway T&T. (ECF No. 1 ¶ 3). Lynnway T&T, acting through and by Dunn and Gossard, hired Hudson on March 15, 2023, and Skipper on March 21, 2023. (ECF No. 19-2 ¶¶ 2, 4; ECF No. 19-3 ¶¶ 2, 4.) Both

---

[4] On February 13, 2024, this case was reassigned to Magistrate Judge William B. Porter.

men were hired by Lynnway T&T to perform construction services on water tanks in Quantico, Virginia, which work Plaintiffs completed on or around April 21, 2023. (ECF No. 1 ¶¶ 14-15; ECF No. 19-2 ¶¶ 1, 4; ECF No. 19-3 ¶¶ 1, 4.) Between their start dates in March and the work completion date of April 21, 2023, Plaintiffs worked around 47.5 hours per week, at an hourly rate of $67.00. (ECF No. 1 ¶¶ 15, 17; ECF No. 19-2 ¶¶ 5–6; ECF No. 19-3 ¶¶ 5–6.)

While they worked for Lynnway T&T, Plaintiffs allege that they received small, intermittent Venmo payments for their work but that Lynnway T&T failed to pay them their full wages or overtime pay. (ECF No. 1 ¶¶ 19, 21; ECF No. 19-2 ¶¶ 9–12; ECF No. 19-3 ¶¶ 9–12.) Plaintiffs also allege that Lynnway T&T failed to pay them in regular intervals or to give them paystubs, as required by Virginia law. (ECF No. 1 ¶ 20; ECF No. 19-2 ¶ 13; ECF No. 19-3 ¶ 13.)

According to Plaintiffs, Lynnway T&T, Dunn, and Gossard's failure to pay them their full wages and overtime pay was willful, intentional, and with actual knowledge that they were acting illegally. (ECF No. 1 ¶ 25.)

### III.   <u>Proposed Findings and Recommendations</u>

Rule 55 of the Federal Rules of Civil Procedure allows entry of a default judgment when "a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend." Because Defendants have failed to respond or otherwise defend the action, the Clerk entered default against all of them. (ECF Nos. 12, 15.)

Once in default, the facts alleged in a complaint are considered admitted against the defendants, and the appropriate inquiry is whether the facts alleged state a claim. *See* Fed. R. Civ. P. 8(b)(6) ("An allegation—other than one relating to the amount of damages—is admitted if a responsive pleading is required and the allegation is not denied."); *see also Ryan v. Homecomings Fin. Network*, 253 F.3d 778, 780 (4th Cir. 2001) and *GlobalSantaFe Corp. v.*

*Globalsantafe.com*, 250 F. Supp. 2d 610, 612 n.3 (E.D. Va. 2003). Even so, the court does not automatically consider as admitted the amount of damages. *See* Fed. R. Civ. P. 8(b)(6). Instead, Federal Rule of Civil Procedure 55(b)(2) allows the court to conduct a hearing to determine the amount of damages, to establish the truth of any allegation by evidence, or to investigate any other matter when necessary to enter or carry out judgment.

A.      **Jurisdiction and Venue[5]**

A court must establish both subject matter jurisdiction over a claim and personal jurisdiction over a party-in-default before a default judgment may be entered.

As for subject matter jurisdiction, district courts are vested with "original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States," 28 U.S.C. § 1331, as well as "original jurisdiction of any civil action or proceeding arising under any Act of Congress regulating commerce or protecting trade and commerce against restraints and monopolies[.]" 28 U.S.C. § 1337(a). The FLSA specifically vests district courts with jurisdiction over any action to recover unpaid minimum or overtime wages. *See* 29 U.S.C. § 216(b). With some exceptions,

> [I]n any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.

28 U.S.C. § 1367(a).

---

[5] The Complaint only alleges subject matter jurisdiction, supplemental jurisdiction, and venue. But Plaintiffs allege personal jurisdiction over Defendants in their Memorandum in Support of the Motion for Default Judgment.

As applied here, because Count I (unpaid minimum wage and overtime pay in violation of the FLSA) arises from a law of the United States, the FLSA, and an Act of Congress regulating commerce, this Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 and § 1337. Because Count II (a Virginia state-law claim for unpaid wages and overtime) arises from the same facts and is based on the same case or controversy as Count I, this Court may exercise supplemental jurisdiction over Count II pursuant to 28 U.S.C. § 1367(a).

As for personal jurisdiction over Suburban, it is a Virginia limited liability company formed under the laws of the Commonwealth of Virginia with a principal place of business in Manassas, Virginia. (ECF No. 1 ¶ 5.) Because it is "at home" in the Eastern District of Virginia, the Court has general personal jurisdiction over Suburban. *See Symbology Innovations, LLC v. Lego Sys., Inc.*, 282 F. Supp. 3d 916, 936 (E.D. Va. 2017) (noting that general personal jurisdiction exists where defendant's affiliations with the state are so "continuous and systematic"—such as a corporation's place of incorporation or principal place of business—that a defendant is essentially at home in the state).

This Court also has personal jurisdiction over Lynnway T&T, Dunn, and Gossard because Virginia law permits the exercise of personal jurisdiction over a party if the alleged cause of action arises from that party having transacted business in the Commonwealth. *See* VA. CODE § 8.01-328.1(A)(1). But that does not end the inquiry because a court's exercise of personal jurisdiction over a party under state law also must comply with due process. *See Carroll v. FedFinancial Fed. Credit Union*, 324 F. Supp. 3d 658 (E.D. Va. 2018) ("Virginia's long arm statute extends the jurisdiction of its courts as far as federal due process permits."). Due process allows courts to exercise personal jurisdiction over non-residents if they have "certain minimum contacts" with the forum state, to avoid offending traditional notions of fair play and substantial

justice. *Int'l Shoe Co. v. State of Wash., Off. of Unemployment Compensation and Placement*, 326 U.S. 310, 320 (1945). As alleged in the Complaint, during the relevant period, Lynnway T&T, Dunn, and Gossard all helped perform construction and related services and duties in Virginia and for Virginia customers. (ECF No. 1 ¶¶ 5, 6, 8.) Lynnway T&T entered into a contract with a Virginia general contractor to perform work in Virginia, and it hired Plaintiffs to perform this work in Virginia. Similarly, Dunn and Gossard are the owners, members, and managers of Lynnway T&T, and they hired, deployed, supervised, and controlled Plaintiffs to work on a Virginia project, as well as ultimately terminating their work without paying them. (ECF No. 1 ¶ 3; ECF No. 19-2 ¶ 2; ECF No. 19-3 ¶ 2.) These facts are more than adequate to support personal jurisdiction over Lynnway T&T, Dunn, and Gossard under VA. CODE § 8.01-328.1 and to constitute sufficient minimum contacts to comply with Defendants' rights to due process. *See Liberty Mut. Fire Ins. Co. v. Menozzi Luigi & C. S.p.A.*, 92 F. Supp. 3d 435, 441 (E.D. Va. 2015) (finding as sufficient to establish minimum contacts the fact that defendant had deliberately engaged in significant or long-term business activities in the forum state).

As for venue, it properly lies in "a judicial district in which any defendant resides, if all Defendants are residents of the State in which the district is located" or "a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred . . . ." 28 U.S.C. § 1391(b)(1)–(2). Because Suburban's principal place of business is in this district (ECF No. 1 ¶ 5) and because a substantial part of the events or omissions giving rise to Plaintiffs' claims against Defendants occurred in this district, venue is proper in this Court pursuant to 28 U.S.C. § 1391.

For these reasons, the Court has subject matter and personal jurisdiction over this action, and venue is proper in this Court.

**B.** **Service**

Federal Rule of Civil Procedure 4(h)(1)(B) allows service to be made, among other ways, by "delivering a copy of the summons and of the complaint to an officer, a managing or general agent, or any other agent authorized by appointment or by law to receive service of process."

According to the affidavits of service filed with the Clerk, a private process server served the summons and Complaint on Suburban's registered agent in Virginia on June 28, 2023 (ECF No. 13), and a different private process server served the summons and Complaint on Lynnway T&T's registered agent in Delaware on June 30, 2023 (ECF No. 7). Dunn and Gossard were served with the summons and Complaint at their homes in Ohio by a different private process server on July 9, 2023. (ECF Nos. 8, 9). Gossard was personally served, and Dunn was served by substituted service through Gossard, who apparently shares the same home address as Dunn. (*Id.*)

For these reasons, Defendants were properly served with the summons and Complaint.

**C.** **Grounds for Entry of Default**

Under Federal Rule of Civil Procedure 12(a), Defendants had to file responsive pleadings within 21 days after they were served with the summons and Complaint. Thus, responsive pleadings were due by July 19, 2023 (Suburban), July 21, 2023 (Lynnway T&T), and July 30 (Dunn and Gossard). No responsive pleadings have been filed by any Defendants, and the deadline has expired. Therefore, on August 11, 2023, Plaintiffs filed a request for entry of default as to Lynnway T&T, Dunn, and Gossard, which the Clerk entered on August 16, 2023. (ECF Nos. 10, 12.) On October 4, 2023, Plaintiffs filed a request for entry of default as to Suburban, which the Clerk entered on October 5, 2023. (ECF Nos. 14, 15.)

Accordingly, the Clerk properly entered default as to all Defendants.

### D. <u>Liability</u>

Under Federal Rule of Civil Procedure 54(c), a default judgment "must not differ in kind from, or exceed in amount, what is demanded in the pleadings." Because a default has been entered against all Defendants, the factual allegations in the Complaint are considered admitted as to them. *See* Fed. R. Civ. P. 8(b)(6). In two counts, Plaintiffs allege that they were not paid for all hours they worked and that they were not paid 1.5 times their regular rate of pay for all hours they worked in a week more than 40, in violation of the FLSA, the VMWA, the VOWA,[6] and the VWPA. (ECF No. 1 ¶¶ 13–44.) Plaintiffs seek unpaid wages, overtime pay, liquidated damages, treble damages, interest, attorney's fees, and costs.

In Count I, Plaintiffs seek relief for unpaid minimum wages and overtime under the FLSA, and, in Count II, relief for, among other things, unpaid minimum wages and overtime "in violation of Virginia wage laws." (ECF No. 1 ¶¶ 27–39.) Because the analysis of minimum wages and overtime pay under the VMWA and the VOWA mirrors the analysis under the FLSA, the federal and state-law claims for minimum wages and overtime pay are addressed together as FLSA claims. *See* VA. CODE § 40.1-29.2 ("Any employer that violates the overtime pay requirements of the federal Fair Labor Standards . . . shall be liable to the employee for the applicable remedies . . . under the Federal Labor Standards Act in action brought pursuant to the process in subsection J of § 40.1-29."); *see Meharg v. York Operations, LLC*, No. 4:22-CV-51, 2022 WL 16636943, at *4 (E.D. Va. Nov. 2, 2022) ("the current version of VOWA incorporates

---

[6] In their Memorandum in Support of Motion for Default Judgment, Plaintiffs rely on VA. CODE § 40.1-29.3 as the basis for their VOWA claim, but that provision of the Code of Virginia applies only to employees of a derivative carrier. Instead, Plaintiffs' VOWA claim arises from VA. CODE § 40.1-29.2, which allows them to claim for an alleged overtime pay violation the same "remedies, damages, or other relief available under the federal Fair Labor Standards Act."

the procedural and remedial aspects of FLSA and does not alter the substantive right to bring a claim for unpaid overtime[.]"). The VWPA claim will be treated separately.

### 1.    Minimum Wages Under the FLSA and the VMWA

To establish violations of the FLSA and the VMWA for nonpayment of minimum wages, a plaintiff must show that (1) the plaintiff was employed by the defendant; (2) the plaintiff was engaged in commerce or in the production of goods for commerce; [7] (3) the plaintiff was not compensated for all hours worked during each workweek at a rate equal to or greater than the then-applicable minimum wage; and (4) none of the exemptions in 29 U.S.C. § 213 applied to the plaintiff's position. 29 U.S.C. § 206.

Plaintiffs have alleged facts in the Complaint to establish all these elements. They allege they were employees of Lynnway T&T. (ECF No. 1 ¶ 4.) They also allege that Dunn and Gossard were the sole managers and owners of Lynnway T&T, that Dunn and Gossard hired Plaintiffs, and that Dunn and Gossard controlled their rate and method of pay. (ECF No. 1 ¶ 15.) Plaintiffs also were employees engaged in commerce under 29 U.S.C. § 207, in that they performed construction work for Lynnway T&T, which had gross annual sales or revenue exceeding $500,000. (ECF No. 1 ¶¶ 9, 14.) Accordingly, Lynnway T&T, Gossard, and Dunn were Plaintiffs' employers under the FLSA. Plaintiffs also allege that they were not compensated for certain hours they worked at a rate equal to or greater than $12.00 an hour and that they were not exempt employees under 29 U.S.C. § 213. (ECF No. 1 ¶¶ 30–31.) Thus, Plaintiffs have

---

[7] 29. U.S.C. § 203(s)(1)(A)(i)-(ii) defines "enterprise engaged in commerce or in the production of goods for commerce" as an enterprise that "has employees engage in commerce or in the production of goods for commerce . . . and is an enterprise whose annual gross volume of sales made or business done is not less than $500,000[.]"

established that Lynnway T&T, Dunn, and Gossard failed to pay them minimum wages under the FLSA and the VMWA.

### 2.      Overtime Wages Under the FLSA and the VOWA

To establish a violation of the FLSA and the VOWA for nonpayment of overtime hours, a plaintiff must show that (1) the employee was employed by the defendant; (2) the employee was engaged in commerce or in the production of goods for commerce; (3) the employee worked over 40 hours per work week; (4) the employee was not compensated at a rate of 1.5 times their regular rate for each hour worked more than 40 hours for each work week; and (5) none of the exemptions in 29 U.S.C. § 213 applied to the employee's position. *See* 29 U.S.C. § 207. Under the FLSA's overtime wage provision, a plaintiff is required to plead "(1) that he worked overtime hours without compensation; and (2) that the employer knew or should have known that he worked overtime but failed to compensate him for it." *Rodriguez v. F&B Solutions LLC*, 20 F. Supp. 3d 545, 547 (E.D. Va. 2014).

Again, Plaintiffs have alleged all these elements in the Complaint. As described above, Plaintiffs were employees of Lynnway T&T, Dunn, and Gossard for purposes of the FLSA and the VOWA. (ECF No. 1 ¶ 15.) Plaintiffs worked seven-and-one-half hours of overtime per week while they were employed by Lynnway T&T. (ECF No.1 ¶ 17.) Hudson worked 37.5 hours of overtime, of which he received no compensation at all for 15 hours. (ECF No. 19-2 ¶ 11.) Skipper worked 33.75 hours of overtime, of which he received no compensation at all for 15 hours.[8] (ECF No. 19-3 ¶ 11.) Plaintiffs were paid for some hours they worked more than 40

---

[8] At the February 23, 2024 hearing, Plaintiffs admitted an error in their pleadings about Skipper's overtime hours. Plaintiffs alleged in their Complaint that they both had worked 37.5 hours of overtime, but Skipper worked six fewer days than Hudson, which reduced Skipper's overtime hours to 33.75.

hours per week, but they were not paid the overtime premium rate of time-and-one-half as required by the FLSA and the VOWA. (ECF No. 19-2 ¶ 11; ECF No. 19-3 ¶ 11.) No evidence exists in the record showing that any of the exemptions listed in 29 U.S.C. § 213 apply to Plaintiffs, and Plaintiffs are covered employees entitled to the protections of the FLSA. *See Darveau v. Detecon, Inc.*, 515 F.3d 334, 337 (4th Cir. 2008) ("An employer bears the burden of proving that a particular employee's job falls within such an exception."); *see also* 29 C.F.R. § 784.21.

Plaintiffs have established that Lynnway T&T, Dunn, and Gossard failed to pay them overtime pay under the FLSA and the VOWA.

### 3.    Violations of the VWPA

The VWPA governs when and how employers must pay their employees and how wages may be withheld or forfeited. All employers that operate a business are required to establish rates of pay for employees as well as regular pay periods that are at least once every two weeks or twice each month. *See* Va. Code § 40.1-29(A). Employers may not "withhold any part of the wages or salaries of any employee except for payroll, wage or withholding taxes or in accordance with law, without written and signed authorization of the employee." Va. Code § 40.1-29(C). As of July 2020, the Virginia General Assembly amended the VWPA to create a private enforcement action that allows an employee to sue an employer to recover their wages. *Id.* § 40.1-29(J). The statute instructs a court to find liability where an employer has "knowingly failed to pay wages to an employee." *Id.* An employer acts "knowingly" if the employer: (i) has actual knowledge of the information, (ii) acts in deliberate ignorance of the truth or falsity of the information, or (iii) acts in reckless disregard of the truth or falsity of the information. *Id.* § 40.1-29(K). As described by the Court of Appeals of Virginia, the purpose of the VWPA "is to protect

employees from bad acting employers." *See Nestler v. Scarabelli*, 77 Va. App. 440, 466 (Va. Ct. App. 2023).

The facts in the Complaint and in Plaintiffs' declarations make clear that Lynnway T&T, Dunn, and Gossard violated the VWPA. While Plaintiffs allege that they were sent "small, intermittent Venmo payments," they also allege that they have not been paid wages or overtime between March and April 2023. (ECF No. 1 ¶¶ 15, 19.) Plaintiffs also allege that they were not given paystubs, and they were not paid with the regularity required by the VWPA. (ECF No. 1 ¶ 19.) For these reasons, Lynnway T&T, Dunn, and Gossard violated the VWPA.

### E.   Damages

As damages, Plaintiffs request unpaid wages, unpaid overtime pay, liquidated damages under the FLSA, treble damages under the VWPA, interest, attorney's fees, and costs. (ECF No. 1 at 7–8 ¶¶ A–F.) For purposes of this section, Lynnway T&T is liable for all damages. Joint and several liability as to Dunn, Gossard, and Suburban is discussed in a later section.

### 1.   Calculation of Unpaid Minimum Wages

Having established that Lynnway T&T failed to pay Plaintiffs' minimum wages under the FLSA and the VMWA, Plaintiffs are entitled to be compensated for the work they performed in an amount equal to the difference between the wages they received and the $12.00 an hour minimum wage. *See* 29 U.S.C. § 206(a)(1); Va. Code § 40.1-28.12. While Plaintiffs allege that Lynnway T&T promised them $67.00 an hour, that rate is relevant only to a breach of contract claim, which has not been brought here. The amount Plaintiffs *should* have been paid under the agreement between them and Lynnway T&T for non-overtime hours is inconsequential to claims solely under the FLSA or the VMWA, as these acts only require that an employee be paid the minimum wage. *See id.*; *see also Rodkey v. Griffin*, Civil Action No. 1:20cv329, 2020 WL

13

9459291, at *6 (E.D. Va. Nov. 30, 2020) (citing *Wallace v. The Kiwi Grp., Inc.*, 247 F.R.D. 679, 683 (M.D. Fla 2008) and *Kimball v. Radius Realty, Inc.*, 2006 WL 8448580, at *2 (M.D. Fla. Mar. 28, 2006)).

Plaintiffs allege that they received no wages at all for the last two weeks they worked for Lynnway T&T, so they each request an award of $960, which they calculate by multiplying Virginia's minimum wage of $12.00 an hour by 80 hours. (ECF No. 27 at 2, 5–6.)

The Court recommends that, under the FLSA and the VMWA, each Plaintiff is entitled to unpaid, non-overtime, minimum wages of $960.00.

### 2.    Calculation of Unpaid Overtime Wages

Under both the FLSA and the VOWA,[9] employers must pay employees compensation at a rate not less than one and one-half times the "regular rate"[10] at which they were employed for their work more than 40 hours per week. *See* 29 U.S.C. § 207(a)(1); Va. Code § 40.1-29.2. For employees like Plaintiffs, who allege that they were to be paid an agreed upon, single hourly rate of $67.00 per hour, "the hourly rate is the 'regular rate.'" 29 C.F.R. § 778.110.

Hudson and Skipper allege that they began working for Lynnway T&T on March 15 and March 21, 2023, respectively. (ECF No. 19-2 ¶ 6; ECF No. 19-3 ¶ 6.) Both Plaintiffs' last day of work was April 21, 2023. (ECF No. 19 at 8.) Plaintiffs allege that they worked more than 40 hours per week every week, so for each hour over 40, they are entitled to an overtime premium of one and one-half of their "regular rate." But for these overtime hours, Plaintiffs either were

---

[9] The FLSA and the VOWA calculate overtime premiums for unpaid overtime wages the same way.

[10] By comparison, the FLSA and the VMWA only permit the recovery of a *minimum wage* for non-overtime hours. *See* 29 U.S.C. § 206(a)(1) and Va. Code § 40.1-28.12.

not paid at all or they were paid straight wages of $67.00 an hour with no overtime premium. (ECF No. 1 ¶ 17.)

As clarified in oral argument, Hudson worked 37.5 hours of overtime and Skipper worked 33.75[11] hours of overtime. (ECF No. 19-2 ¶ 11; ECF No. 19-3 ¶ 11.) Of these overtime hours, Plaintiffs were only paid at their regular rate of $67.00 an hour for 22.5 hours with no overtime premium, leaving Plaintiffs with an overtime premium deficiency of $753.75 (22.5 hours x ($67.00 x 0.5)). *Id.* For the remaining overtime hours (15 hours for Hudson and 11.25 hours for Skipper), Plaintiffs received no payment at all. Hudson is therefore owed $1,507.50 for 15 hours of unpaid overtime (15 x $67.00 x 1.5), and Skipper is owed $1,130.63 for 11.25 hours of unpaid overtime (11.25 x $67.00 x 1.5). *Id.*

As summarized in the chart below, under the FLSA and the VOWA, the Court recommends that Hudson be awarded unpaid overtime wages of $2,261.25 ($1,507.50 + $753.75), and Skipper be awarded unpaid overtime wages of $1,884.38 ($1,130.63+ $753.75).

| Plaintiff | Regular Rate | Overtime Rate | Overtime Hours Without Premium | Unpaid Overtime Premium | Overtime Hours Without Any Pay | Unpaid Regular Rate & Overtime Premium | Total Unpaid Overtime Wages |
|-----------|--------------|---------------|--------------------------------|-------------------------|--------------------------------|----------------------------------------|-----------------------------|
| Hudson | $67/hr. | $100.50 | 22.5 | $753.75 | 15 | $1,507.50 | $2,261.25 |
| Skipper | $67/hr. | $100.50 | 22.5 | $753.75 | 11.25 | $1,130.63 | $1,884.38 |

### 3.    Liquidated Damages

In FLSA cases, employees are routinely awarded liquidated damages equal to the amount of unpaid minimum wage and overtime compensation. *See* 29 U.S.C. § 216(b); *Donovan v. Bel-Loc Diner, Inc.*, 780 F.2d 1113, 1118 (4th Cir. 1985). An employer can avoid liquidated damages

---

[11] The total hours differ slightly because Skipper was hired six days later than Hudson. This fact was confirmed during a hearing on February 23, 2024.

if he can show "that the act or omission giving rise to such action was in good faith and that he had reasonable grounds for believing that his act or omission was not a violation" of the FLSA. 29 U.S.C. § 260. But Defendants have not appeared or presented any defenses to Plaintiffs' FLSA claims, so an award of liquidated damages equal to the amount of unpaid minimum wages and overtime compensation is appropriate.

As summarized in the chart below, under the FLSA, the VMWA, and the VOWA, the Court recommends an award of liquidated damages to each Plaintiff equal to the total amount of their unpaid minimum wages and their unpaid overtime wages. So Hudson is entitled to liquidated damages of $3,221.25 ($960 + $2,261.25), and Skipper is entitled to liquidated damages of $2,844.38 ($960 + $1,884.38).

| Plaintiff | Unpaid Minimum Wages | Unpaid Overtime Wages | Total Liquidated Damages |
|-----------|----------------------|-----------------------|--------------------------|
| Hudson | $960 | $2,261.25 | $3,221.25 |
| Skipper | $960 | $1,884.38 | $2,844.38. |

### 4. VWPA Damages

The VWPA approaches damages very differently from the FLSA, the VMWA, and the VOWA. Rather than differentiating between a "minimum wage" and a "regular rate" of pay when computing non-overtime pay and overtime pay, the VWPA provides that "any employer who fails to make payment of *wages* in accordance with subsection A [*i.e.*, "all wages or salaries due him for work performed" prior to termination] shall be liable for the payment of all wages due, and an additional amount as liquidated damages, plus interest at an annual rate of eight percent accruing from the date the wages were due." VA. CODE § 40.1-29(G) (emphasis added). More still, "[i]f the court finds that the employer knowingly failed to pay wages to an employee in accordance with this section, the court shall award the employee an amount equal to triple the

amount of wages due and reasonable attorney's fees and costs." VA. CODE § 40.1-29(J). The "knowingly" standard can be satisfied simply by providing evidence that the person "has knowledge of the information." VA. CODE § 40.1-29(K).

So if an employer fails to pay an employee a regular rate of pay, over regular pay periods, or fails to pay an employee wages owed when the employment relationship is terminated, the VWPA permits an employee to recover all wages owed plus an additional, equal amount as liquidated damages and eight percent prejudgment interest. If the employee can show the employer had actual knowledge that the employee had not been paid, the VWPA permits an employee to recover triple the wages owed, along with reasonable attorney's fees and costs.

Plaintiffs allege that they were not paid the full amount of wages for the hours they worked from March to April 21, 2023. (ECF No. 19-2 ¶ 6; ECF No. 19-3 ¶ 6.) They also allege that their agreed wage was $67.00 an hour. (ECF No. 1 ¶ 17.) While Plaintiffs allege that they were paid in small increments from time-to-time by Venmo, they were never paid the full amount they were owed. (ECF No. 1 ¶ 19.) Plaintiffs also allege that Lynnway T&T had actual knowledge that they had not been paid, that their failure to pay Plaintiffs violated the VWPA, and that Lynnway T&T's failure to pay their wages was willful, intentional, with actual knowledge of illegality and was not the product of good-faith efforts to comply with VWPA requirements. (ECF No. 1 ¶¶ 24–25.)

Using the analysis in sections III.(E)(1) and (2) for unpaid hours worked for violating the FLSA, the VMWA, and the VOWA, but applying the "regular rate" of $67.00 for all non-over time hours worked and $100.50 for all overtime hours worked as required by the VWPA (rather than the minimum wage for non-overtime hours), the VWPA provides a much larger recovery for the same number of hours worked. Under the VWPA each Plaintiff can recover $5,360.00 in

unpaid non-overtime wages for the last two weeks they worked for Lynnway T&T—80 non-overtime hours ($67.00 x 80). (ECF No. 27 at 5–6.) Plaintiffs also can recover the overtime premium for the 22.5 hours of overtime for which Lynnway T&T only paid them straight time (ECF No. 27 at 1–2), as well as an overtime rate of time and a half for the overtime hours they worked (15 for Hudson and 11.75 for Skipper) without any pay (ECF No. 27 at 1–2). As summarized in the chart below, under the VWPA, Hudson is entitled to unpaid non-overtime wages and unpaid overtime wages of $7,621.25, and Skipper is entitled to unpaid non-overtime wages and overtime wages of $7,244.38.

| Plaintiff | 80 Non-Overtime Hours at $67/hr. | 22.5 Overtime Hours Without Premium ($67 x 0.5) | Unpaid Overtime Hours at $100.50/hr | Total Unpaid Wages |
|---|---|---|---|---|
| Hudson | $5,360.00 | $753.75 | $1,507.50 | $7,621.25 |
| Skipper | $5,360.00 | $753.75 | $1,130.63 | $7,244.38 |

Along with an award of all unpaid wages, the VWPA provides for an award of "an additional equal payment of wages" as "liquidated damages." VA. CODE § 40.1.29(G). More still, "[i]f the court finds that the employer knowingly failed to pay wages . . . the court shall award the employee an amount equal to triple the amount of wages due and reasonable attorney fees and costs." VA. CODE § 40.1-29(J). As described in section III.(D)(3), Lynnway T&T violated the VWPA, and it did so knowingly, in that it hired Plaintiffs, failed to pay them at least once every two weeks or twice in each month, and failed to pay them all wages due for the work they performed when the employment relationship was terminated.

Thus, the Court recommends that, under the VWPA, Hudson should be awarded unpaid wages and treble damages of $22,863.75 ($7,621.25 x 3), and Skipper should be awarded unpaid wages and treble damages of $21,733.14 ($7,244.38 x 3).

### 5.  Attorney's Fees and Costs

Plaintiffs also seek reasonable attorney's fees and costs, which are recoverable under both the FLSA and the VWPA. (ECF No. 1, at 8 ¶ E.) In their Memorandum in Support of Motion for Default Judgment, Plaintiffs ask for $7,805.50 in attorneys for 23.3 hours of legal time and $841.20 in costs. (ECF No. 19-4.) Plaintiffs attach to their memorandum an Affidavit in Support of Attorney's Fees and Costs, which includes a breakdown of their attorney's time spent on the case. (ECF No. 19-4.)

"Under the so-called 'American rule,' a prevailing party generally cannot recover attorneys' fees from the losing party." *Ulloa v. QSP, Inc.*, 271 Va. 72, 81 (2006) (citing *Lee v. Mulford*, 269 Va. 562, 565 (2005)). But the Supreme Court has "recognized departures from the American Rule only in 'specific and explicit provisions for the allowance of attorneys' fees under selected statutes.'" *Baker Botts L.L.P. v. ASARCO LLC*, 576 U.S. 121, 126 (2015) (quoting *Alyeska Pipeline Serv. Co. v. Wilderness Soc'y*, 412 U.S. 240, 260 (1975)). In calculating attorneys' fees, "a court must first determine a lodestar figure by multiplying the number of reasonable hours expended times a reasonable rate." *Robinson v. Equifax Info. Servs.*, *LLC*, 560 F.3d 235, 243 (4th Cir. 2009) (citing *Grissom v. The Mills Corp.*, 549 F.3d 313, 320 (4th Cir. 2008)). The Fourth Circuit provides twelve factors in determining the reasonable number of hours and rate:

> (1) the time and labor expended; (2) the novelty and difficulty of the questions raised; (3) the skill required to properly perform the legal services rendered; (4) the attorney's opportunity costs in pressing the instant litigation; (5) the customary fee for like work; (6) the attorney's expectations at the outset of the litigation; (7) the time limitations imposed by the client or circumstances; (8) the amount in controversy and the results obtained; (9) the experience, reputation and ability of the attorney; (10) the undesirability of the case within the legal community in which the suit arose; (11) the nature and length of the professional relationship between attorney and client; and (12) attorneys' fees awards in similar cases.

*Id.* (citing *Barber v. Kimbrell's Inc.*, 577 F.2d 216, 226 n.28 (4th Cir. 1978)). The Federal Rules of Civil Procedure allow the prevailing party an award of costs incurred unless a federal statute, the Federal Rules of Civil Procedure, or a court order provides otherwise. Fed. R. Civ. P. 54(d)(1).

The FLSA, VOWA, VMWA, and VWPA expressly provide for the mandatory award of attorneys' fees and costs. *See* 29 U.S.C. § 216(b); Va. Code §§ 40.1-29.3(C), 40.1-28.12, 40.1-29(J). Plaintiffs request reasonable attorney's fees and costs in their Complaint and Motion for Default Judgment. (ECF No. 1, at 8; ECF No. 19, at 9–10.)

Considering the factors articulated by the Fourth Circuit in *Robinson*, the Court finds that the attorney's fees identified in the affidavit attached to the memorandum are reasonable, except as noted below. First, the $350.00 hourly rate charged by Mr. Miller aligns with hourly rates charged by attorneys of the same level of experience in the Northern Virginia area, and the time he expended on this matter was appropriate and is consistent with the time expended in similar cases. The time spent on the tasks identified in the affidavit, also, is reasonable, with one exception.

One entry on the spreadsheet attached to the affidavit describes a communication about Tanner Clifton, a plaintiff who is not part of the Motion for Default Judgment and whom Mr. Miller no longer represents. (ECF Nos. 19-4 at 25.) The entry reflects the following task, "Call w/ Tanner; revisions to declaration," which has an associated fee of $167.50. (ECF No. 19-4.) Without further explanation about how this entry relates to Plaintiffs' Motion for Default Judgment, Defendants should not have to pay this fee, and the Court does not award it to Plaintiffs. After deducting this amount, the Court recommends an award of $7,638 for attorney's fees.

Plaintiffs also request costs in the amount of $841.20 for the filing fee ($402.00) and service fees ($439.20). (ECF No. 19-4.) The Court finds these costs to be reasonable and recommends an award of $841.20 for costs.

### 6.     Interest

Plaintiffs also request both pre- and post-judgment interest. (ECF No. 1 at 8 ¶ D.) While prejudgment interest is not recoverable under the FLSA or the VWPA,[12] the Court may award post-judgment interest at the rate provided by 28 U.S.C. § 1961 for the FLSA claim. *See Kennedy v. A Touch of Patience Shard Hous., Inc.*, 779 F. Supp. 2d 516, 527 (E.D. Va. 2011); *see, e.g.*, *Thomas v. County of Fairfax, Va.*, 758 F. Supp. 353, 370 (E.D. Va. 1991) ("Post-judgment interest is due on awards under FLSA in accordance with 28 U.S.C. § 1961[.]").

Accordingly, the Court recommends an award of post-judgment interest at the rate provided by 28 U.S.C. § 1961.

### F.     <u>Joint and Several Liability of Dunn, Gossard, and Suburban</u>

The above sections outline liability under the FLSA, the VMWA, the VOWA, and the VWPA for all damages against Lynnway T&T, as Plaintiffs' employer. In some cases, Dunn and Gossard also may be responsible for some or all these damages as owners of Lynnway T&T, and Suburban may be responsible for some or all of these damages as the contractor on the project for which Lynnway T&T served as a subcontractor.

---

[12] The Supreme Court has "held that FLSA's liquidated damages were provided in lieu of calculating the costs of delay—which is the function of prejudgment interest—and therefore that a claimant could not recover both prejudgment interest and liquidated damages." *Hamilton v. 1st Source Bank,* 895 F.2d 159, 166 (4th Cir. 1990) (citing *Brooklyn Sav. Bank v. O'Neil*, 324 U.S. 697, 715–16 (1945). Similarly, the VWPA omits the award of prejudgment interest when a court finds that the employer knowingly failed to pay wages to an employee. VA. CODE § 40.1-29(J).

### 1. Defendants Dunn and Gossard are Jointly and Severally Liable with Lynnway T&T for FLSA, VOWA, and VMWA Damages

For Dunn and Gossard to be liable for Plaintiffs' minimum wages and overtime wages allowed by the FLSA, the VOWA, and the VMWA, they must be an "employer," as defined by the FLSA.[13] *See* 29 U.S.C. §§ 206, 207. The FLSA defines an "employer" to include "any person acting directly or indirectly in the interest of an employer in relation to an employee." 29 U.S.C. § 203(d). The majority rule is that an individual corporate officer may be an "employer" under the FLSA and subject to liability in their individual capacity if that officer "acts as a supervisor with sufficient control over the conditions and terms of plaintiff's employment." *Zegarra v. Marco Polo, Inc.*, 2009 WL 143428, at *2 (E.D. Va. Jan. 21, 2009) (citation and quotation marks omitted). "The overwhelming authority is that a corporate officer with operational control of a corporation's covered enterprise is an employer along with the corporation, jointly and severally liable under the FLSA for unpaid wages." *Id.* (quoting *Donovan v. Agnew*, 712 F.2d 1509, 1511 (1st Cir. 1983)).

The facts alleged in the Complaint and in the declarations filed by Hudson and Skipper make plain that Dunn and Gossard are owners and managers of Lynnway T&T and that they exercised significant control over Plaintiffs' day-to-day employment, including the power to hire, fire, and set wages and compensation for them. (ECF No. 1 ¶¶ 3–4; ECF No. 19-2 ¶¶ 2, 7–8; ECF No. 19-3 ¶¶ 2, 7–8.) Thus, Dunn and Gossard are each an "employer" under the FLSA, the VMWA, and the VOWA, and, individually, they are jointly and severally liable for

---

[13] The VOWA and VMWA use the same definitions as the FLSA. *See* VA. CODE § 40.1-29.2. *Cornell v. Benedict*, 301 Va. 342, 348, 350 (2002) (noting that the VMWA adopts the FLSA definition of employer by including persons in addition to entities).

Plaintiffs' claims under these acts for unpaid minimum wages, unpaid overtime wages, liquidated damages, attorney's fees, and costs, as outlined in sections III.(E)(1), (2), (3), and (5).

### 2.   Defendants Dunn and Gossard are *not* Jointly and Severally Liable with Lynnway T&T for VWPA Damages

The VWPA, however, defines "employer" differently than the FLSA. The VWPA defines an "employer" as:

> an individual, partnership, association, corporation, legal representative, receiver, trustee, or trustee in bankruptcy doing business in or operating within this Commonwealth who employs another to work for wages, salaries, or on commission and shall include *any similar entity* acting directly or indirectly in the interest of an employer in relation to an employee.

VA. CODE § 40.1-2 (emphasis added). This difference is meaningful. As the Supreme Court of Virginia has noted, the FLSA uses the term "persons"; the VWPA uses "entity," instead. *See Cornell v. Benedict*, 301 Va. 342, 349-351 (2022) (holding that, if the Virginia General Assembly had wanted to adopt the FLSA definition of "employer" for VWPA claims, it knew how to do so).

Thus, Dunn and Gossard are *not* jointly and severally liable for Plaintiffs' VWPA claims.

### 3.   Defendant Suburban is Jointly and Severally Liable with Lynnway T&T for All Damages

As described in the facts above, Suburban is the general contractor that hired Lynnway T&T as a subcontractor to perform construction services on water tanks at a facility in Quantico, Virginia. (ECF No. 1 ¶¶ 5, 14; ECF No. 19-1.) Under Virginia law, there is an implied contractual term in any contract between a general contractor and a subcontractor that can make a general contractor liable for the wages of their subcontractor's employees. Specifically,

> Any construction contract between a general contractor and its subcontractor . . . shall be deemed to include a provision under which the general contractor, its subcontractor . . . are jointly and severally liable to pay the employees of any additional subcontractor . . . the greater of (i) all wages due to a subcontractor's

> employees . . .or (ii) the amount of wages that the subcontractor . . . is required to
> pay to its employees under the provisions of applicable law[.]

VA. CODE. § 11-4.6(C)(1). The reference to "applicable law" means both the VMWA and the

FLSA. *Id.* As a result, general contractors are "jointly and severally liable to pay" the wages for a

subcontractor's employees. *Id.* Further, Code of Virginia § 11-4.6(C)(2) deems a general

contractor to be the "employer" of the subcontractor's employees "for purposes of § 40.1-29,"

meaning the general contractor also is responsible for liquidated damages, treble damages,

attorney's fees, and costs. VA. CODE § 11-4.6(C)(2) ("the general contractor shall be subject to

all penalties, criminal and civil, to which an employer that fails or refuses to pay wages is subject

to under § 40.1-29. Any liability of a general contractor pursuant to § 40.1-29 shall be joint and

several with the subcontractor that failed or refused to pay the wages to its employees.").

Thus, Suburban is jointly and severally liable with Lynnway T&T for all Plaintiffs'

damages under the FLSA, the VMWA, the VOWA, and the VWPA for unpaid minimum wages,

unpaid non-overtime wages, unpaid overtime wages, liquidated damages, treble damages,

attorney's fees, and costs, as outlined in sections III.(E)(1) –(5).

## IV.   <u>Conclusion</u>

As described above, Plaintiffs are entitled to damages based on different federal and state

statutes in differing amounts. "It also goes without saying that the courts can and should preclude

double recovery by an individual." *Gen. Tel. Co. of the Nw. v. EEOC*, 446 U.S. 318, 333 (1980).

Thus, obviously, Plaintiffs cannot recover from the same defendant for—for example—damages

under both the FLSA for non-overtime wages at the minimum wage and the VWPA for non-

overtime wages at the parties' agreed-upon-hourly rate. Each Plaintiff can recover from each

Defendant, jointly and severally, up to the total amount awarded to each Plaintiff and up to each

individual Defendants' maximum liability.

Thus, the Court recommends judgment for each Plaintiff against each Defendant in the amounts below.

**Jonathan Hudson**

Total damages of **$27,103.35**, which represents damages for unpaid non-overtime wages in the amount of $5,360.00 (computed at the "regular rate" per the VWPA, which is higher than the minimum wage used to calculate non-overtime wages under the FLSA), overtime wages in the amount of $2,261.25, treble damages under the VWPA in the amount of $15,242.50 (which is higher than the liquidated damages allowed by the FLSA) half the attorney's fees of $3,819.00, and half the costs in the amount of $420.60.

Hudson's total damages of $27,103.35 are recoverably jointly and severally against Lynnway T&T and Suburban

Of Hudson's total damages of $27,103.35, up to $10,682.10 is recoverable jointly and severally against Dunn and Gossard, which represents damages for unpaid non-overtime wages in the amount of $960.00 (computed at the minimum wage per the FLSA, which is lower than the "regular rate" used to calculate non-overtime wages under the FLSA), overtime wages in the amount of $2,261.25, liquidated damages under the FLSA in the amount of $3,221.25 (which is less than the treble damages allowed by the VWPA) half the attorney's fees of $3,819.00, and half the costs in the amount of $420.60.

**Robert Skipper**

Total damages of **$25,972.74**, which represents damages for unpaid non-overtime wages in the amount of $5,360.00 (computed at the "regular rate" per the VWPA, which is higher than the minimum wage used to calculate non-overtime wages under the FLSA), overtime wages in the amount of $1,884.38, treble damages under the VWPA in the amount of $14,488.76 (which

is higher than the liquidated damages allowed by the FLSA) half the attorney's fees of $3,819.00, and half the costs in the amount of $420.60.

Skipper's total damages of **$25,972.74** are recoverably jointly and severally against Lynnway T&T and Suburban

Of Skipper's total damages of $25,972.74, up to $9,928.36 is recoverable jointly and severally against Dunn and Gossard, which represents damages for unpaid non-overtime wages in the amount of $960.00 (computed at the minimum wage per the FLSA, which is lower than the "regular rate" used to calculate non-overtime wages under the FLSA), overtime wages in the amount of $1,884.38, liquidated damages under the FLSA in the amount of $2,844.38 (which is less than the treble damages allowed by the VWPA) half the attorney's fees of $3,819.00, and half the costs in the amount of $420.60.

All damages for both Hudson and Skipper accrue post-judgment interest pursuant to 28 U.S.C. § 1961(a).

## V.   <u>Notice</u>

Through the Court's electronic filing system and by mailing a copy of this proposed findings of fact and recommendations to Dunn and Gossard at 6535 State Route 196, Lima, OH 45806; Lynnway T&T at 8 The Green, Dover, DE 19901; and Suburban at 106 Dumfries Road, Manassas, VA 20112. The parties are notified that objections to these proposed findings of fact and recommendations must be filed within 14 days of service of this proposed findings of fact and recommendations, and a failure to file timely objections waives appellate review of the substance of the proposed findings of fact and recommendations and waives appellate review of any judgment or decision based on this proposed findings of fact and recommendations.

Entered this 15th day of March 2024.

_____
William B. Porter
United States Magistrate Judge

Alexandria, Virginia